IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| COASTAL CONSERVATION ASSOCIATION, }<br>}<br>} | |
| *Plaintiff*, } | Civil Case No. 4:05-cv-1214 |
| v. } | Consolidated With |
| } | Civil Case No. 4:05-cv-2998 |
| CARLOS GUTIERREZ, in his official capacity }<br>as Secretary of the United States Department of }<br>Commerce; THE NATIONAL OCEANIC }<br>AND ATMOSPHERIC ADMINISTRATION; }<br>and THE NATIONAL MARINE FISHERIES }<br>SERVICE, }<br>} | |
| *Defendants*, }<br>} | |
| and } | |
| GULF RESTORATION NETWORK and THE }<br>OCEAN CONSERVACY, }<br>} | |
| *Plaintiffs*, }<br>} | |
| v. }<br>} | |
| CARLOS GUTIERREZ, et al., }<br>} | |
| *Defendants*. } | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Plaintiff Coastal Conservation Association's Motion for Attorney's Fees and Costs under the Equal Access to Justice Act (Doc. 87) and the Motion of Plaintiffs Gulf Restoration Network and The Ocean Conservancy for Attorneys' Fees and Costs under the Equal Access to Justice Act (Doc. 89). Upon review and consideration of these documents, the response and replies thereto, and all applicable legal standards, the Court hereby ORDERS that Plaintiffs' motions (Docs. 87 and 89) are GRANTED as set forth below.

I.         Background and Relevant Facts

Plaintiffs Coastal Conservation Association ("CCA"), Gulf Restoration Network ("GRN"), and The Ocean Conservancy ("TOC") challenged the Secretary of Commerce's adoption of Amendment 22 to the Gulf of Mexico Reef Fishery Management Plan (the "FMP"). They brought their claims under the Administrative Procedures Act (the "APA"), 5 U.S.C. § 701 *et seq.*, the National Environmental Policy Act (the "NEPA"), 42 U.S.C. § 4341 *et seq.*, and the Magnuson-Stevens Fishery Conservation and Management Act (the "Fishery Act"), 16 U.S.C. § 1801 *et seq.*  Essentially, Plaintiffs argued that the National Marine Fisheries Service (the "Service") violated the APA and the Fishery Act when it approved Amendment 22 and that the Service violated the NEPA by not considering sufficient alternatives to the plan adopted. Additionally, CCA claimed that the Service violated the APA and the Fishery Act when it denied its petition for emergency rulemaking.

In a Memorandum Opinion and Order dated March 12, 2007, the Court ruled as follows: (1) it granted Plaintiffs' motions for summary judgment on their claim that the Service violated the APA and the Fishery Act when it approved Amendment 22, (2) it granted Defendants' motion for summary judgment on Plaintiffs' claim that the Service violated NEPA, and (3) it granted Defendants' motion for summary judgment on CCA's claim that the Secretary of Commerce violated the APA and the Fishery Act in denying CCA's petition for emergency rulemaking.  Additionally, the Court ordered the Secretary of Commerce, consistent with his obligations under the Fishery Act, to approve a red snapper rebuilding plan, considering measures to reduce bycatch in the shrimp fishery within the next nine months.

As prevailing parties in this litigation, Plaintiffs have moved the Court for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act (the "EAJA"),

28 U.S.C. § 2412(d)(1)(A). In their response, Defendants contend that Plaintiffs' motions must be denied in their entirety under the EAJA because "the government's litigating position in this case was substantially justified, notwithstanding the adverse ruling on two accounts." (Doc. 94 at 3). Even if the Court decides that the government's litigating position was not substantially justified, Defendants argue that Plaintiffs' fee award must be reduced to account for Plaintiffs' limited success, the hourly rate for attorney billing must be limited to the applicable EAJA cap, and any costs awarded must be reduced to a reasonable amount. The Court will address each of these arguments in turn.

II.     Legal Standard

The primary purpose of the EAJA is "to ensure that [private parties] will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights." *Miles v. Bowen*, 632 F. Supp. 282, 283 (M.D. Ala. 1986) (quoting H.R. Rep. No. 120, 99th Cong., 1st Sess. 4, *reprinted in* 1985 U.S. Code Cong. & Ad. News 132, 132-33). "Congress also desired to discourage federal agencies from taking frivolous positions." *Id.* (citing *Photo Data, Inc. v. Sawyer*, 533 F. Supp. 348, 352 n. 7 (D.D.C. 1982). The EAJA, therefore, provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Supreme Court in *Scarborough v. Principi*, 541 U.S. 401, 408 (2004), outlined the requirements of an application for attorneys' fees and expenses as follows:

> . . . § 2412(d)(1)(B) sets a deadline of 30 days after final judgment for the filing of a fee application and directs that the application shall include: (1) a showing that the applicant is a prevailing party; (2) a showing that the applicant is eligible to receive an award . . . and (3) a statement of the amount sought together with an itemized account of time expended and rates charged.

*Id.* at 408 (citing 28 U.S.C. § 2412(d)(1)(B)).  Additionally, the Court noted that the second sentence of section 2412(d)(1)(B) adds a fourth instruction, which requires that the applicant simply 'allege' that the position of the United States was not substantially justified.  *Id.*

III.        Discussion

The parties do not dispute that Plaintiffs timely filed their application for attorneys' fees and expenses, that Plaintiffs are prevailing parties, and that Plaintiffs are eligible to receive an award.  The Court, therefore, is left with only two issues: (1) whether the position of the United States was substantially justified or if special circumstances would make an award unjust, and (2) if not, the amount to which Plaintiffs are entitled to recover in attorneys' fees and expenses.

> A.    The Position of the United States was not Substantially Justified and Special Circumstances would not Make an Award Unjust

"The Supreme Court has interpreted the phrase substantially justified to mean 'justified to a degree that could satisfy a reasonable person.'"  *U.S. v. Truesdale*, 211 F.3d 898, 908 (5th Cir. 2000) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  "The Court equated a substantially justified position with one having a 'reasonable basis in law and fact."  *Id.* at 908 (quoting *Underwood*, 487 U.S. at 566 n. 2).  "The burden of proving substantial justification falls to the Government."  *Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003) (citing *Herron v. Bowen*, 788 F.2d 1127, 1130 (5th Cir. 1986)).  The Government must show, "based on the record (including the record with respect to the decisions of the agency upon

which the civil action is based), that it acted reasonably at all stages of the litigation." *Id.* at 406 (citing 28 U.S.C. § 2412(d)(2)(D); *SEC v. Fox*, 855 F.2d 247, 248, 251-52 (5th Cir. 1988); *Herron*, 788 F.2d at 1130).

Plaintiffs argue that the Government's position was not substantially justified because "the very studies and analysis upon which they rely contradict the key assumption necessary to bring Amendment 22 in compliance with the law." (Doc. 87 at 6). Furthermore, Plaintiffs contend that the Government "failed to address measures to reduce red snapper bycatch in the shrimp fishery, by claiming that the issue would be addressed in a future amendment to the Shrimp Fishery Management Plan" and that this was contrary to the plain meaning of National Standard 9, codified at 16 U.S.C. § 1851(a)(9). (*Id.*). The Government disagrees and asserts that its position was substantially justified. The Government points to the fact that it prevailed on Plaintiffs' NEPA claims and on Plaintiff CCA's claim regarding the denial of its emergency rulemaking request. Additionally, the Government argues that the claims on which Plaintiffs prevailed involved the interpretation of a complex set of facts upon which reasonable persons could disagree. For the reasons set forth below, the Court finds that the Government has failed to meet its burden to show that its position was substantially justified in the underlying litigation.

The Court's two main holdings in the underlying litigation are relevant to the substantial justification analysis. First, the Court found that "the stock rebuilding plan contained in Amendment 22 is inconsistent with the scientific data cited by the Gulf Council and has a less than fifty percent chance of rebuilding red snapper stocks by 2032." (Doc. 84 at 7). The Court went on to state that, "[t]his violates the Service's duty to adopt a plan that will rebuild overfished stocks within the time period established pursuant to [16 U.S.C. § 1854(e)(4)], in this case, thirty-one point six years." (*Id.* at 6-7). The Court, therefore, remanded Amendment 22 to

the Service for promulgation of a rule within the next nine months that would have, at least, a fifty percent chance of succeeding. (*Id.* at 9). Second, the Court held that "Amendment 22 also violates [16 U.S.C. § 1853(a)(11)] by not, to the extent practicable, minimizing bycatch." (*Id.*). Further, the Court found that "Defendants avoided discussing measures to reduce red snapper bycatch in the shrimp fishery by saying they will address the issue in the Shrimp Fishery Management Plan," which is contrary to the plain meaning of the statute. (*Id.*). With respect to this finding, the Court ordered the Service "to consider and adopt, if practicable, measures to minimize bycatch in the shrimp fishery." (*Id.*).

As the Fifth Circuit stated in *Baker v. Bowen*, 839 F.2d 1075 (5th Cir. 1992), "[a]s a general proposition . . . if the case lacks substantial evidence, and does not turn on mere evidentiary ambiguities or involve novel legal principles, 'the absence of support for the Secretary's decision in this case is at once an absence of justification for her position.'" *Id.* at 1084 (quoting *Herron*, 788 F.2d at 1132). The instant case involves neither evidentiary ambiguities nor novel legal principles as seen in the Court's holding. Accordingly, the Court finds that the Government's position was not substantially justified.

      B.     <u>The Amount to which Plaintiffs are Entitled to Recover</u>

          1.     <u>Attorneys' Fees</u>

Under the EAJA, "fees and other expenses" includes "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees[.]" 28 U.S.C. § 2412(d)(1)(D)(2)(A). The statute continues as follows:

> [t]he amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation

> for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

*Id.* There are three types of expenses reimbursable under the EAJA, which are as follows: "(1) costs enumerated in 28 U.S.C. § 1920,[1] (2) reasonable expenses of attorneys, and (3) reasonable expenses of expert witnesses." *U.S. v. Adkinson*, 256 F. Supp. 2d 1297, 1319 (N.D. Fla. 2003).

In the Fifth Circuit, determining reasonable attorney's fees involves a two-step process. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *Id.* at 324 (citing *Hensley*, 461 U.S. at 433). "Then the district court must multiply the reasonable hours by the reasonable hourly rates." *Id.* (citations omitted). "The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case." *Id.* (citing *Brantley v. Surles*, 804 F.2d 321, 325 (5th Cir. 1986).

In its motion, Plaintiff CCA makes the following arguments with respect to attorneys' fees: (1) it is entitled to recover $159.60 per hour for work done on its behalf by

---

[1] This statute provides that a judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

attorneys and paraprofessional staff without special expertise in the subject matter of the case; and (2) it is entitled to recover $300.00 per hour for work performed by Robert Hayes ("Hayes") because of his skill, knowledge, and experience with the subject matter of the underlying litigation and since $300.00 per hour is a comparable rate to that of other experts practicing in this area.  CCA seeks a total of $129,163.94 in attorneys' fees.  In their motion, GRN and TOC have argued as follows: (1) the time claimed by counsel was necessarily, reasonably, and efficiently spent; (2) the time spent on fee recovery is compensable; and (3) they are entitled to EAJA rates with an adjustment for inflation.  GRN and TOC seek a total of $159,484.07 in attorneys' fees.

The Government has various issues with Plaintiffs' arguments.  First, with respect to the attorneys' fees sought by CCA, the Government asserts the following: (1) work performed on CCA's original complaint should be excluded from any fee award; (2) CCA's request for enhanced fees for Hayes at the rate of $300.00 per hour should be rejected;[2] (3) CCA's fee request for paralegal work should be reduced from $7,177.00 to $3,640.00, which reflects an hourly rate adjustment and deducts the amount of paralegal time spent on clerical tasks; and (4) CCA should not be compensated for the non-attorney time of Pat C. Wilson ("Wilson").  The Government assumes that the remainder of attorney and paralegal hours claimed by CCA are reasonable, and, as such $87,704.66 is the applicable lodestar figure.  With respect to GRN and TOC's motion, the Government argues that any fee award should be reduced to account for GRN and TOC's limited success and that the Court should not permit them to recover for work performed by summer associate, Nicholas Yorio ("Yorio").  Thus, the Government argues the resulting lodestar figure with respect to GRN and TOC should be $116,342.46.

---

[2] The Court notes, however, that Defendants do not dispute the calculations as to the applicable inflation-adjusted hourly rate cap.

Because the Government assumes the remainder of attorney and paralegal hours claimed are reasonable, the Court will only address the Government's objections listed above.

First, the Government argues that because CCA did not prevail on any of the claims set forth in its original complaint, it is not entitled to a fee award for work performed on those claims. CCA initially filed suit on April 11, 2005, to compel Defendants to publish Amendment 22 in the Federal Register. (Doc. 1). On May 27, 2005, NOAA submitted Amendment 22 to the Federal Register for publication. As such, Defendants moved to dismiss CCA's original complaint as the claims set forth in it were rendered moot. (Doc. 14). CCA subsequently amended its complaint to challenge Amendment 22's substance. (Doc. 16). Defendants then filed a second motion to dismiss CCA's moot claims. (Doc. 25). On December 12, 2005, the Court granted Defendants' second motion to dismiss and denied their first as moot.

The Court acknowledges that CCA did not obtain judicially ordered relief with respect to the claims it asserted in its original complaint. The Court, however, finds that the claims asserted in the original and amended complaints involve the same factual bases and issues, and, as such "the attorneys should be fully compensated for their work on the case as a whole." *See U.S. v. Jones*, 125 F.3d 1418, 1427 (11th Cir. 1997) (quoting *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1500 (11th Cir. 1986) (citing *Hensley*, 461 U.S. at 435)). Additionally, the Court notes that, as CCA states in its reply, "[t]he entire litigation for which CCA now seeks its fees and costs under the EAJA could not have been commenced without Amendment 22's publication, since any challenge to Amendment 22 prior to its final adoption and publication would have been premature." (Doc. 100 at 9). In support of this statement, CCA cites to *EPA v. Brown*, 431 U.S. 99 (1977), wherein the Supreme Court refused to review "regulations not yet promulgated." *Id.* at 104. Accordingly, the Court declines to reduce the

lodestar amount by $26,011.92 to account for CCA's failure to secure judicially ordered relief on the claims in its original complaint as the Government has requested.

While the Government does not dispute Plaintiffs' calculations with regards to the applicable inflation-adjusted hourly rate cap, they do object to CCA's request for enhanced fees for Hayes at the rate of $300.00 per hour. The EAJA places an hourly rate cap on attorneys' fees "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). An enhanced rate is available to attorneys "'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." *Underwood*, 487 U.S. at 572. The Supreme Court found that this "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question-as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id.* Examples of this include patent law or knowledge of foreign law or language. *Id.* The standard set by the Fifth Circuit in *Baker*, 839 F.2d at 1084, illustrates that an increased rate for specialized skill or limited availability should be awarded only if "(1) the number of competent attorneys who handle cases in the specialized field is so limited that individuals who have possibly valid claims are unable to secure representation; *and* (2) that by increasing the fee, the availability of lawyers for these cases will actually be increased." *Perales v. Casillas*, 950 F.2d 1066, 1078 (5th Cir. 1992) (emphasis in original) (citing *Baker*, 839 F.2d at 1085). The *Perales* Court stated,

> [i]n a sense, every attorney practicing within a narrow field could claim specialized knowledge. Although the district court found that '[i]mmigration law is a specialty area requiring an extensive and current knowledge of applicable statutes and regulations,' such is true for virtually any area of law, particularly those involving the

>intricate federal statutory schemes that typically give rise to awards under the EAJA.

*Id.* at 1078.

Upon review and consideration of these standards, the Court is unpersuaded by CCA's argument that Hayes is entitled to a fee of $300.00 per hour because he is "one of only a handful of attorneys in the country with 'distinctive knowledge or specialized skill' with regard to the Magnuson-Stevens Act and the long history of government inaction in regard to the protection of the red snapper." (Doc. 100 at 12). Based on the language in the *Perales* opinion cited above, here, the Court declines to rely on the First Circuit's statement in *Atlantic Fish Spotters Ass'n v. Daley*, 205 F.3d 488 (1st Cir. 2000), that "if a plaintiff can show that a particular 'fisheries law' case . . . requires for competent counsel someone from among a small class of specialists who are available . . . that seems to us enough to meet the language of the statute, its purpose, and the Supreme Court's gloss." *Id.* at 490. While the Court finds that CCA is entitled to the applicable inflation-adjusted hourly rate cap for Hayes, they may not collect an award of $300.00 per hour for Hayes' work. Accordingly, the Court finds that Hayes' fees must be reduced from $18,660.00 to $9,927.17.

The Government argues that CCA's fee request for paralegal work should be reduced from $7,177.00 to $3,640.00, which reflects an hourly rate adjustment and deducts the amount of paralegal time spent on clerical tasks, and that CCA should not be compensated for the non-attorney time of Wilson. The Fifth Circuit has found that paralegal expenses are "separately recoverable only as part of a prevailing party's award for attorney's fees and expenses, and even then only to the extent that the paralegal performs work traditionally done by an attorney. Otherwise, paralegal expenses are separately unrecoverable overhead expenses." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) (citing *Jones v. Armstrong Cork Co.*,

630 F.2d 324, 325 & n.1 (5th Cir. 1980)).  *See also Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).  Accordingly, as Defendants point out, the following are clerical tasks that are not traditionally performed by an attorney: (1) 4.7 hours organizing record and exhibits by Marion A. Pratt ("Pratt"), and (2) 0.5 hours responding to request for additional documents and organizing file by Kristy A. Taylor ("Taylor") in 2006.  The Court finds that those 4.7 hours should be subtracted from Pratt's billable hours, making her total billable hours equal zero.  Additionally, the Court finds that 0.5 hours should be subtracted from Taylor's billable hours, making 19.20 hours her total billable hours for 2006.  Accordingly, CCA's lodestar amount must be reduced by $658.00 with respect to Pratt and $70.00 with respect to Taylor.

Defendants argue that CCA's paralegals be compensated at the rate of $80.00 per hour and cite to *In re Chapter 13 Fee Applications*, 2006 WL 2850115, *5 (Bkrtcy. S.D. Tex. 2006), which established a reasonable hourly rate of $75.00 for paralegals.  What Defendants fail to mention, however, is that the bankruptcy court relied on General Order 2004-5, which "established reasonable hourly rates for professionals *in chapter 13 cases* . . . at $75.00 for paralegals." *Id.* at *8 (emphasis added).  The Court notes that this is a fisheries law case, not a chapter 13 bankruptcy case and, thus, finds Defendants' reliance on it unpersuasive.  Without any additional authority supporting Defendants' position, the Court finds that the reasonable hourly rate for paralegals in this case should be set at the "usual rate for such services" as set forth in the Affidavit of Bruce Cahn (Cahn Aff. at ¶ 3).  This sets the rate for Pratt and Faustina M. Ash ("Ash") at $140.00 per hour.  It sets the rate for Taylor at $140.00 per hour for 2006 and $150.00 per hour for 2007.  These are the rates CCA used in calculating its lodestar amount.

Defendants further argue that the Court should decline to compensate CCA for the non-attorney time of Wilson, a Senior Government Relations Assistant.  Regardless of whether

the Court considers Wilson a paralegal, the Court reiterates that CCA may not be reimbursed for clerical tasks performed by a paralegal. As Defendants state in their response, Wilson's tasks primarily included monitoring the Federal Register. In finding that CCA's lodestar amount should be decreased by $1,224.00, which represents the amount it billed for Wilson's time, the Court notes that, in its reply, CCA failed to present an argument in response to Defendants' objection to Wilson's billing.

Next, Defendants argue that any fee award to GRN and TOC should be reduced to account for their limited success. It points to the fact that CCA excluded from its fee request any work performed on its NEPA claim and its claim regarding Defendants' denial of the emergency rulemaking request but that GRN and TOC did not reduce their fee request to account for the lack of success on their NEPA claims. As a result, Defendants contend that GRN and TOC's attorney time should be reduced by twenty-five percent, which serves to approximate the number of hours these plaintiffs spent on briefing the NEPA claim. The Court is not persuaded by Defendants' assertions, however, and does not agree that GRN and TOC's lodestar figure should be reduced by twenty-five percent.

As the Supreme Court stated in *Hensley*, when the district court considers whether to adjust a fee upward or downward, it will look at the factor of the "results obtained." *Hensley*, 461 U.S. at 434 (footnote omitted). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* Accordingly, the Court must address two issues in such a situation: (1) whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded, and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.* While they may not have been successful on each

and every claim they asserted, the Court finds that GRN and TOC's NEPA claims and those claims on which they were successful involve a "common core of facts" and are "based on related legal theories." *Id.* Additionally, as GRN and TOC state in their reply, they filed this case for one reason, to force Defendants to prepare an adequate rebuilding plan for red snapper in the Gulf of Mexico, which result they achieved.

With respect to the Government's final argument that Yorio's work is not compensable, the Court agrees. The Government asserts that Yorio's time entries do not adequately describe the work he performed, for example, his billing entries say "[m]eet with Steve on 5th Circuit cases" and "[f]inalize Memo for Steve(?)." Additionally, the Government argues that, for those entries with a sufficient description of the work performed, such work is not compensable. The Government points to Yorio's research on the possibility of challenging Amendment 22 before it was published, as well as on the possibility of intervening in CCA's suit. Because neither courses of action were ever taken, the Government argues that these tasks are not compensable. The Court finds the Government's arguments with respect to Yorio's billing to be well taken and, as such, shall reduce GRN and TOC's lodestar amount by $4,360.80. The Court also notes that GRN and TOC did not dispute the Government's arguments about Yorio's billing in their reply brief.

Accordingly, as set forth above, the lodestar amounts shall be reduced as follows: With respect to CCA, the proposed lodestar amount of $129,163.94 must be reduced by $9,460.83 ($8,732.82 regarding Hayes, $658.00 regarding Pratt, and $70.00 regarding Taylor). CCA is, therefore, entitled to attorneys' fees in the amount of $119,703.11. With respect to GRN and TOC, the proposed lodestar amount of $159,484.07 must be reduced by $4,360.80, which represents Yorio's billing. GRN and TOC are, thus, entitled to attorneys' fees in the

amount of $155,123.27. The Court finds that these lodestar amounts are adequate to compensate Plaintiffs for attorneys' fees, and the Court does not believe it is necessary to adjust these amounts.

2. Costs

Plaintiff CCA argues that it is entitled to recover costs for various other litigation expenses, including long distance telephone calls, photocopies, postage, travel mileage and parking, legal research, computer services, Westlaw, and a *pro hac* attorney certificate. Plaintiffs GRN and TOC assert that they have incurred costs and expenses for filing fees, copying fees, and computerized legal research.

The Government, in its response, states that, because Plaintiffs prevailed on at least one of their claims for relief, it will not contest Plaintiffs' entitlement to EAJA-eligible costs incurred in this cause. The Government contends, however, that the Court should deny the $7,998.03 in costs associated with electronic research ($7,571.91 with respect to CCA and $426.16 with respect to GRN and TOC). Alternatively, if the Court allows Plaintiffs to recover electronic research costs, the amount should be reduced to $426.16 for CCA and $426.16 for GRN and TOC.

Electronic research costs would fall into the second category of expenses reimbursable under the EAJA, reasonable expenses of attorneys. "Expenses are 'those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried.'" *Ybarra v. Astrue*, No. C-07-329, 2008 WL 2779291, *6 (S.D. Tex. July 15, 2008) (citing *Kelly v. Bowen*, 862 F.2d 1333, 1335 (8th Cir. 1988) (quoting *Oliveira v. United States*, 827 F.2d

735, 744 (Fed. Cir. 1987))). Thus, "other expenses" have been found to include, *inter alia*, electronic research. *Id.*

The Court recognizes the competing arguments on this issue. Plaintiffs assert that the amount of $7,571.91 is reasonable under *U.S. v. Adkinson*, 256 F. Supp. 2d 1297, 1319 (N.D. Fla. 2003) and *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988), which found that computerized legal research is a compensable expense. Defendants, on the other hand, contend that "the attorneys have been adequately compensated in the lodestar amount for the time expended on legal research." *Mississippi State Chapter Operation Push v. Mabus*, 788 F. Supp. 1406, 1423 (N.D. Miss. 992) (*aff'd*, 12 F.3d 208 (5th Cir. 1993). The court in that case "cautions counsel to exercise fiscal restraint. Charges for excessive and unnecessary computer legal research are not compensable expenses . . . [f]urthermore, approving such expenditures could be viewed as underwriting a portion of counsels' law library. Therefore, the expenses are excluded." *Id.* at 1423. While the Court recognizes that computerized legal research may be compensated, the amount billed must be reasonable. The Court finds that the $426.16 amount GRN and TOC assert for such research is reasonable. Furthermore, the Court finds that CCA's claim for $7,571.91 in electronic research expenses is reasonable, as well. As CCA stated in its reply brief, the total amount of fees for legal research is a fraction of the entire fees and costs incurred by CCA in this proceeding. Such a small portion of the fees and costs cannot be considered unreasonable given the scope of the underlying litigation. Accordingly, the Court finds that costs shall be awarded to Plaintiff CCA in the amount of $11,994.60 and to Plaintiffs GRN and TOC in the amount of $515.55.

IV.        Conclusion

Accordingly, it is hereby

ORDERED that Plaintiff Coastal Conservation Association's Motion for Attorney's Fees and Costs under the Equal Access to Justice Act (Doc. 87) and the Motion of Plaintiffs Gulf Restoration Network and The Ocean Conservancy for Attorneys' Fees and Costs under the Equal Access to Justice Act (Doc. 89) are GRANTED-IN-PART as set forth above. It is further

ORDERED that Plaintiff CCA is entitled to attorneys' fees in the amount of $119,703.11 and costs in the amount of $11,994.60. It is further

ORDERED that Plaintiffs GRN and TOC are entitled to attorneys' fees in the amount of $155,123.27 and costs in the amount of $515.55.

SIGNED at Houston, Texas, this 30th day of September, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE